*B. Hardin* for appellant, *Cates & Lindsey* for appellee.

CHANCELLOR
*vs*
VANHOOK AND
BROOKING.

---

# Chancellor *vs* Vanhook and Brooking.

ERROR TO THE HARRISON CIRCUIT.

*Delivery bonds. Executions. Equity and equitable jurisdiction.*

JUDGE EWING delivered the Opinion of the Court.

Two executions for four hundred dollars each, and interest and costs, in favor of Vanhook against Brooking, were sued out of the Clerk's office of the Harrison Circuit Court, directed to the Sheriff of Nicholas county, and by his deputy were levied upon a negro man slave by the name of Jim, and Brooking & Chancellor as his security, executed a bond under the statute for his delivery at Carlisle, the Court house of Nicholas, on the 19th

CHANCERY.

*Case* 140.

*June* 1.

The case stated.

of October, 1840, at 12 o'clock. Chancellor lived twen-ty-three miles from Carlisle, and on the evening before the day of delivery Jim was sent by Brooking to the house of Chancellor, and early in the morning on the next day Chancellor and the son of Brooking set out with the honest intention of delivering the slave at the time and place appointed, and in due time to have done so; but attempting to travel through the country by a road which they were told was nearer than the ordinary way, and with which they were not well acqainted, they got lost, by reason whereof and by reason of a heavy rain which fell after they set out, by which the road, which was hilly, was rendered slippery, they were delay-ed and prevented from reaching Carlisle until between one and two o'clock; that immediately upon their arri-val Chancellor tendered the slave to the Sheriff in dis-charge of his bond, who, after some hesitation and con-sultation with counsel, received the slave and took a new bond with Chancellor as security for the delivery of the slave on the next County Court day. The slave was de-livered and the new bond executed by Chancellor under the full conviction that thereby he was discharged from all liability on the first bond. And the slave was after-wards delivered at the time and place designated in the last bond, and ultimately sold and the whole proceeds applied towards the discharge of the executions. But it appears that the Sheriff, under the direction of coun-sel, and without the knowledge of Chancellor, re-levied the executions on the slave, and the new bond was taken under the last levy. Notwithstanding which, the first bond was afterwards returned to the office as forfeited, and after the sale of the slave under the last levy and ap-plication of the proceeds to the executions, an execution was taken out on the forfeited bond against Brooking who is insolvent, and Chancellor as his security, for the residue of the amount of the executions not made by the sale of the slave, and has been levied on the land of Chancellor, to enjoin the sale of which and be released from further liability, he filed his bill in chancery charg-ing the foregoing facts. His injunction having been dis-

solved and bill dismissed without prejudice, he has appealed to this Court.

It is certainly questionable whether the Sheriff, after he has taken a delivery bond under the statute, and the time for delivering the property has passed by, can make a new levy under the executions in his hands; and it is still more questionable whether he can make a new levy upon the property committed to the hands of the surety to be delivered, and still hold up and return his bond as forfeited. The statute prescribes his duties, which is to receive and sell the property delivered, or to return the bond to the office as forfeited, and upon which a new execution may issue. If he receives and sells the property, it would seem that it ought to be regarded as a waiver of the forfeiture, as the object and end of the law in requiring the bond has been attained, and the more especially as the property has been taken from the hands of the surety, where it was placed by the principal, and who in good conscience might have a right to retain it for his indemnity against his liability upon his forfeited bond, if the same is to be afterwards treated and returned as forfeited.

But waiving this view of the subject, the substantial object and aim of the law was to secure a faithful delivery of property levied on, at the place and on the day designated, with the view to its being subjected to sale in satisfaction of the execution; and though it may not be delivered at the precise moment fixed in the bond, if it be delivered in full time to be exposed to sale, and may be sold with equal advantage to the creditor, the ends of justice are attained, and the substantial objects of the law and the bond complied with: *Sadler* vs *Glover*, 5 *Dana*, 551.

But if, as in this case, the surety has made an honest and faithful effort to deliver the property at the precise time fixed in the bond, and would have done so but for an unforseen casualty by which he was delayed in reaching the point an hour or so after the time; but after he did arrive the slave was taken into the custody of the Sheriff and ultimately sold, and the proceeds applied to-

---

CHANCELLOR
*vs*
VANHOOK AND
BROOKING.

*Qu.* Can a Sheriff after having levied a *fi. fa.* and taken a delivery bond for the property levied on, make a new levy before disposing of the first; or if he may do so, can he make a new levy of the same execution on the property first levied on whilst it is in the hands of the surety in the delivery bond, placed there to be delivered up, and still hold up the first delivery bond and return it *forfeited.*

The substantial object and aim of the law, in permitting the execution of delivery bonds, is to secure the property for sale on the day and at the place appointed, to be sold in satisfaction of the execution—and tho' not delivered at the precise moment appointed for its delivery, if it be delivered in time to be sold with equal advantage to the creditor, it should be regarded as a compliance.

It is the province of the Chancellor to relieve against *accidents,*

*penalties and forfeitures, when the surety in a delivery bond was prevented by accident from the delivery of the property at the hour appointed for its delivery, and the Sheriff then made another levy of the same execution, took a new delivery bond under which the property was delivered and sold in satisfaction of the execution; the Chancellor relieved the surety against the forfeiture of the first delivery bond.*

wards the payment of the executions; the Chancellor, whose province and peculiar jurisdiction it has ever been to relieve against *accidents, penalties,* and *forfeitures,* ought and will interpose and afford relief. Nor do we deem the principal in the bond a necessary party; the security may be released without releasing the principal; he is still liable for the residue of the amount due upon the executions either upon the original judgments or upon the bond; and a mode is pointed out, in the case of *Hagan* vs *Tobin, 5 Dana,* 269, by which the plaintiff in the executions may proceed. And if the principal was a necessary party, it was a rigid practice to dismiss the bill merely because process had not been served on him without first making a rule on the complainants to show cause why it had not been served, and giving reasonable day for the service.

It is the opinion of this Court that the decree of the Circuit Court be reversed and cause remanded that a decree may be rendered, perpetually enjoining the dfendant from proceeding further on his executions against the complainant below.

*McClung & Taylor* for plaintiff; *J. Trimble* for defendants.